IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANADARKO PETROLEUM CORPORATION, | § § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION 4:10-cv-2185 |
| | § | |
| NOBLE DRILLING (U.S.) LLC, | § | Admiralty |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Anadarko Petroleum Corporation (Anadarko) files this complaint for declaratory judgment against defendant Noble Drilling (U.S.) LLC (Noble).

### Preliminary Statement

1. This is an action for declaratory judgment brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure to determine an actual case or controversy between Anadarko and Noble concerning Anadarko's exercise of force majeure rights under a maritime contract between the parties.

### Parties

2. Anadarko is a Delaware corporation, with its principal office and principal place of business in The Woodlands, Texas.

3. Noble is a Delaware limited liability company, with its principal office and principal place of business in Sugar Land, Texas. It may be served with process and a copy of this document by serving its registered agent for service of process, C T Corporation, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

**Jurisdiction and Venue**

4. The drilling contract between Anadarko and Noble provides that Noble furnish a drilling vessel, the *Noble Amos Runner,* to Anadarko for the purpose of drilling one or more offshore wells in the Gulf of Mexico. The main piece of equipment to be supplied by Noble was a vessel, and the contract focused upon the use of a vessel in a maritime transaction. The drilling contract is a maritime contract governed by federal maritime law.

5. This Court has subject matter jurisdiction pursuant to the general maritime laws of the United States and 28 U.S.C. § 1333. This action is within the admiralty jurisdiction of this Court as that term is defined by Rule 9(h) of the Federal Rules of Civil Procedure.

6. There is an actual and immediate controversy between Anadarko and Noble. The parties dispute the interpretation of the drilling contract and the right of Anadarko to declare force majeure, including Anadarko's right to terminate the contract given the continuance of force majeure conditions. Noble has threatened to "exercise its legal rights" against Anadarko unless Anadarko withdraws its declaration of force majeure.

7. Venue is proper in this district because this is a judicial district in which the defendant is subject to personal jurisdiction and because the contract between the parties was negotiated and executed in this district and Anadarko gave notice of force majeure to Noble in this district. A substantial part of the events giving rise to, and at issue in, this lawsuit occurred in this district.

**Facts**

8. On or about March 8, 2008, Anadarko and Noble entered the Domestic Daywork Drilling Contract – Offshore (Drilling Vessel) (Contract), providing that Noble furnish the drilling vessel, the *Noble Amos Runner,* to Anadarko for the purpose of drilling one or more

offshore wells in the Operating Area. The Operating Area was defined as the United States Gulf of Mexico, Well # 1, Offshore Louisiana, Minimum Water Depth: 200', Maximum Water Depth: 7,400'. Appendix A to the Contract, Drilling Order. The Contract further provided that drilling was to occur on a Designated Well, defined as the well or wells to be drilled in the Operating Area and specified in Appendix A. Appendix A specified that the Designated Well was a well or wells to be determined by Anadarko.

9. The duration of the Contract was through March 7, 2011, unless sooner terminated by Force Majeure or other specified causes. Paragraph 1303, <u>Force Majeure</u>, provided:

> (a) Except for the duty of Operator or Contractor to make payment hereunder when due, and except as may be provided in this Paragraph 1303, neither party shall be liable for failure to perform the terms of this Contract when such performance is prevented, delayed or rendered impossible by a condition of Force Majeure.  Force Majeure shall mean, Acts of God (other than adverse sea or weather conditions), war, strikes (excluding strikes, lockouts or other industrial disputes or action amongst employees of Contractor and/or its subcontractors), acts of the public enemy, quarantine, epidemic, blockade, civil disturbance, riots, insurrection, rules or regulations of any governmental authority having or claiming jurisdiction or control in the premises, the compliance with which makes continuance of operations impossible, or any other cause beyond the reasonable control of such party, whether or not similar to the causes specified herein.
>
> (b) In the event either party hereto is rendered unable, wholly or in part, by any Force Majeure cause to perform its obligations under this Contract, it is agreed that such party shall give notice and details of the Force Majeure circumstances in writing to the other party as promptly as possible after its occurrence. In such cases, the obligations which cannot be carried out by the party giving the notice shall be suspended during the continuance of any inability so caused except that Operator shall be obliged to pay to Contractor the Force Majeure Rate provided for in Paragraph 707.  Nothing in this Paragraph 1303 shall be construed to relieve any party of its indemnity and insurance obligations contained in this Contract.

10. The Contract provided for the payment of a Force Majeure Rate for up to a maximum of 15 consecutive days, after which no day rate was payable. The Contract further

provided that, after the maximum number of days and during the continuous existence of the Force Majeure condition, either party had the option to terminate the Contract. Paragraph 707, Force Majeure Rate, provided:

> The Force Majeure Rate specified in Appendix A will be payable during any period in which operations are not being carried on because of a Force Majeure event, as defined in Paragraph 1303 of the Contract, up to a maximum number of consecutive days specified in Appendix A, after which no day rate shall be payable. After the maximum number of days specified in Appendix A and during the continuous existence of the Force Majeure condition, the Contract may be terminated at the option of either party by giving five days advance written notice to the other party.

11. On April 20, 2010, a fire and explosion occurred on the *Deepwater Horizon,* an offshore drilling rig operated by BP, Inc. in the Gulf of Mexico, which led to the sinking of the rig and a deepwater oil spill. In response to these events, on May 28, 2010, the Minerals Management Service (MMS) of the United States Department of the Interior issued a six month moratorium on deepwater drilling in the Gulf of Mexico. Effective May 30, 2010, NTL No. 2010-N04 directed Anadarko and other lessees and operators of federal oil and gas leases to cease drilling all new deepwater wells in the Gulf of Mexico, prohibited Anadarko from spudding new wells, and gave notice that MMS would not consider for six months drilling permits for deepwater wells. NTL No. 2010-N04 further provided that, if the lessee or operator was currently drilling any well covered by the moratorium, it must proceed at the next safe opportunity to secure the well and take all necessary steps to cease operations and temporarily abandon or close the well until further guidance from the Regional Supervisor was received.

12. On the date the moratorium was issued, the *Noble Amos Runner* was operating on OCS-G 21444 Keathley Canyon 875 No. 2 Well, Anadarko's Designated Well under the Contract. On May 28, 2010, John L. Rodi, Deputy Regional Director of the MMS issued a

specific order to Anadarko to cease operations on the Designated Well and take all necessary steps to secure the well.

13. Anadarko complied with these governmental directives and, on May 28, 2010, issued a Force Majeure notice to Noble under Paragraph 1303(b) of the Contract, giving notice of a Force Majeure event which prevented Anadarko from the performing the terms of the Contract. The Force Majeure event consisted of:

> [T]he recent moratorium on offshore drilling activity in the Gulf of Mexico, including but not limited to (i) the Minerals Management Service's ("MMS") moratorium on the issuance of various permits such as Applications for Permits to Drill and Exploration Plans ("EP"), which the President of the United States announced yesterday would continue for at least six months, (ii) the decision of other state agencies not to issue CZMA consistencies which are required to conduct drilling activities in the waters adjacent to those states, and (iii) the specific order issued on May 28, 2010 by John L. Rodi, Deputy Regional Director of the MMS for Anadarko to cease operations on OCS-G 21444 Keathley Canyon 875 No. 2 Well and take all necessary steps to secure the well.

Anadarko further advised Noble that those restrictions made it impossible for Anadarko to continue operations under the Contract, including, but not limited to, Anadarko's obligations under Paragraph 605(a) to provide proper and sufficient certificates, permits, or permission necessary to enter upon and operate on the Drilling Site. Accordingly, Anadarko gave notice of Force Majeure and advised Noble that it would compensate Noble at the Force Majeure Rate effective May 28, 2010.

14. The Force Majeure condition continued for 15 consecutive days. In accordance with Paragraph 707 of the Contract, on June 14, 2010, Anadarko gave written notice to Noble of termination of the Contract to be effective five days from Noble's receipt of the notice.

15. By letter dated June 3, 2010, Noble responded to Anadarko that it "fundamentally disagreed" that NLT No. 2010-N04 prohibited Anadarko from performing under the Contract or constituted Force Majeure. Noble asserted that it was "far from impossible" for Anadarko to

obtain certifications and permits and suggested that Anadarko redeploy the *Noble Amos Runner* in shallower waters between 200' and 500', use the rig for drilling water and gas injection wells, disposal wells and execution of completion, workover, abandonment and other intervention activities on existing wells in the Gulf of Mexico.  Finally, Noble suggested that Anadarko use the *Noble Amos Runner* in international locations, outside the Gulf of Mexico.

16. Noble reiterated its "fundamental" disagreement with Anadarko's exercise of Force Majeure under the Contract by letter dated June 16, 2010.  It further asserted that Anadarko's declaration of Force Majeure was premature because the *Noble Amos Runner* was continuing to perform activities to close and abandon the Designated Well and that it was improper for Anadarko to pay the Force Majeure Rate. Noble also threatened that, unless Anadarko was unwilling to alter its present course under the Contract, "Noble will have no choice but to exercise its legal rights."

## Declaratory Judgment and Relief Sought

17. Anadarko incorporates the allegations above.

18. In accordance with 28 U.S.C. § 2201, an actual controversy exists between Anadarko, on the one hand, and Noble, on the other hand.

19. This declaratory judgment action is proper because the judgment will clarify and settle legal relations between Anadarko and Noble and provide relief from the uncertainty and controversy giving rise to the proceeding.

20. Anadarko seeks, and is entitled to, a judgment declaring that:

a. A condition of Force Majeure has occurred within the meaning of the Contract by reason of rules and regulations of any governmental authority having or claiming jurisdiction or control in the premises;

b. The Force Majeure condition continued for 15 consecutive days;

    c.    Anadarko has given the proper notices required by the Contract; and

    d.    The Contract is lawfully terminated as of June 19, 2010.

21.    Anadarko also seeks, and is entitled to, its attorneys' fees, expenses, and costs of court in connection with obtaining this declaratory relief, and such other and further relief to which Anadarko may show itself justly entitled.

Dated: June 18, 2010

    Respectfully submitted,

/s/ Alison L. Smith
Alison L. Smith
Attorney-in-Charge
Texas Bar No. 18529500
SDTX ID No. 816
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, TX 77010
Tel: (713) 547-2673
Fax: (713) 236-5698
Email: alison.smith@haynesboone.com

*Attorneys for Anadarko Petroleum Corporation*